[Cite as *State ex rel. McGurr v. Indus. Comm.*, 2017-Ohio-2941.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.
James M. McGurr,                                     :

                                                     :
        Relator,
                                                     :

v.                                                   :            No. 16AP-430

                                                     :
The Industrial Commission of Ohio                            (REGULAR CALENDAR)
and Time Warner Cable, Inc.,                          :

                                                     :
        Respondents.
                                                     :

D E C I S I O N

Rendered on May 23, 2017

**On brief:** *Leah VanderKaay*, and *Robert C. Ochs*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *LaTawnda N. Moore*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

DORRIAN, J.

{¶ 1} In this original action, relator, James M. McGurr, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the January 21, 2016 order of its staff hearing officer which denied relator's June 26, 2015 motion for reimbursement from the self-insured employer, respondent, Time Warner Cable, Inc. for relator's out-of-pocket costs for the dispensing of the prescription drug Xaralto on five occasions during the period beginning two years prior to the date of relator's motion.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto.  The magistrate recommends that this court deny relator's request for a writ of mandamus.

{¶ 3}  No party has filed objections to the magistrate's decision.  The case is now before this court for review.

{¶ 4}  No error of law or other defect is evident on the face of the magistrate's decision. Therefore, we adopt the findings of fact and conclusions of law contained therein.  Accordingly, relator's request for a writ of mandamus is denied.

*Writ of mandamus denied.*

TYACK, P.J., and SADLER, J., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. James M. McGurr, | : | |
| Relator, | : | |
| v. | : | No. 16AP-430 |
| The Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Time Warner Cable, Inc., | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on February 7, 2017

*Leah P. VanderKaay* and *Robert C. Ochs,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 5} In this original action, relator, James M. McGurr, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the January 21, 2016 order of its staff hearing officer ("SHO") that denied relator's June 26, 2015 motion for reimbursement from the self-insured employer for relator's out-of-pocket costs for the dispensing of the prescription drug Xarelto on five occasions during the period beginning two years prior to the date of relator's motion.

Findings of Fact:

{¶ 6}   1. On May 24, 1986, relator sustained an industrial injury while employed as an "installer" for respondent, Time Warner Cable, Inc., a self-insured employer under Ohio's workers' compensation laws.

{¶ 7}   2. The industrial claim (No. 916690-22) is allowed for:

> Multiple rib fractures; fractured transverse process L3, L4, L5; aggravation of pre-existing lumbar spondylolisthesis; gout; laceration right upper arm; pulmonary embolism.

### Dr. Shoemaker's Medical Records

{¶ 8}   3. Relator was treated by Kathleen Shoemaker, D.O., from June 2, 2011 through July 15, 2013.  Eighty pages of office notes generated by multiple office visits are contained in the stipulated record.  During the period of her treatment of relator, Dr. Shoemaker was employed by Pioneer Physicians Network.

{¶ 9}   4. The record contains a seven-page office note that was generated by an April 4, 2013 office visit.  At that office visit, Dr. Shoemaker stopped the prescription of Coumadin and replaced it with Xarelto.  The office note states:

> **Treatment**
> **[One] Pulmonary embolism and infarction, other**
>
> Stop Coumadin tablet, 3 mg, 1 tab, orally, qd
> Start Xarelto tablet, 20 mg, 1 tab(s), orally, once a day (in the evening), 30 day(s), 30, Refills 5

(Emphasis sic.)

{¶ 10} 5. The record contains a three-page office note from Dr. Shoemaker that was generated by a May 31, 2013 office visit.  Under "Current Medications," there is listed "Xarelto 20 mg tablet 1 tab(s) once a day (in the evening)."

> Under "Assessments," three items are listed:
>
> [One] Dizziness - 780.4 (Primary)
> [Two] DVT or embolism of distal lower extremity - 453.42
> [Three] Pulmonary embolism and infarction, other - 415.19
>
> Under "Treatment," the following are listed:
>
> **[One] Dizziness**

Mildly [improved] however recent medication change by neurologist yesterday. To have [follow-up appointment] with neurology within the month.

**[Two] DVT or embolism of distal lower extremity**
Continue Xarelto tablet, 20 mg, 1 tab(s), orally, once a day (in the evening).

(Emphasis sic.)

### Dr. McLaughlin's Medical Records

{¶ 11} 6. Relator was treated by Andrew H. McLaughlin, D.O., from May 8, 2014 to June 16, 2015 while Dr. McLaughlin was employed by Falls Family Practice. Thirty pages of office notes are contained in the stipulated record.

{¶ 12} 7. The record contains a three-page office note that was generated by a May 8, 2014 office visit with Dr. McLaughlin.

{¶ 13} Under "Assessment Plan," the following are listed:

Routine general medical exam (V70.0)
Pulmonary embolism (415.19)
-greenfield filters
He is to schedule a follow-up visit with Andrew Hugh McLaughlin DO for follow up 1 Week.
Hypertension Nos (401.9)

{¶ 14} Under "Medications (Added, Continued or Stopped This Visit)," the following are listed:

| | | |
|---|---|---|
| 05/08/2014 | Hyzaar 100 mg-12.5 mg tablet | take 1 tablet by oral route every day |
| 05/08/2014 | Xarelto 20 mg tablet | take 1 tablet by oral route every day with the evening meal |

{¶ 15} 8. On June 26, 2015, relator filed a motion on form C-86. Relator requested as follows:

Claimant requests that the self insured employer: 1) be ordered to reimburse and/or pay for medication previously submitted to the claimant's private health insurance plan; 2) as well as future medication to be prescribed in the future. Said medication is for the allowed conditions in the claim.

{¶ 16} The C-86 form asks the movant to describe the evidence presented in support of the motion.  In response, relator stated:

> See attached Discount Drug Mart pharmacy printout for period 8/1/11 to 8/1/14, (underlined medications are the only ones pertinent to the allowed conditions in the claim); SummaCare EOB's attached; fax transmittal sheet dated 9/18/14 to the BWC with list of paid prescriptions.
>
> [A]dditional medical records in the form of office notes and pharmacy records to be submitted.

{¶ 17} 9. In support of his motion, relator submitted a five-page document from "Discount Drug Mart, Inc. # 64."  As relator's counsel indicated at oral argument before the magistrate, the claim for reimbursement in this action only involves five transactions involving the dispensing of Xarelto.  Those dispensing transactions are as follows:

| Drug | Quantity | Date | Patient Paid | Third Party Paid |
| --- | --- | --- | --- | --- |
| Xarelto 20 mg tablet | 30 | 5/08/2014 | $297.23 | 0.00 |
| Xarelto 20 mg tablet | 30 | 11/25/2013 | $30.00 | $233.50 |
| Xarelto 20 mg tablet | 30 | 10/23/2013 | $30.00 | $233.50 |
| Xarelto 20 mg tablet | 30 | 8/15/2013 | $30.00 | $233.50 |
| Xarelto 20 mg tablet | 30 | 7/18/2013 | $30.00 | $218.65 |

{¶ 18} As indicated by relator's counsel at oral argument before the magistrate, at issue in this action is the total out-of-pocket costs to relator for the five dispensing transactions described above.  Thus, the total monetary sum at issue is $417.23.

{¶ 19} 10. The record contains a single-page document captioned "Statement As To Medical Necessity." According to relator, the document was signed by Dr. McLaughlin and filed November 10, 2015.

{¶ 20} In that regard, the document contains a signature line for the "Physician Name."  While a signature presumably appears on the signature line, it is illegible.

Moreover, the actual name of the physician is not disclosed by a printing of the physician's name.

{¶ 21} 11. The above-described document sets forth four queries. The fourth query provides:

> Is it within reasonable medical certainty that the requested treatment and/medication is:
>
> (a) Medically necessary for the allowed conditions in the claim?
>
> Yes_____ No _____
>
> (b) Medically appropriate for the allowed conditions in the claim?
>
> Yes _____ No _____
>
> On the form, the physician marked the "yes" spaces.
>
> The above-described document sets forth the following query:
>
> Please briefly outline the basis for your opinion as indicated in question 4 above.
>
> In the space provided, it is handwritten:
>
> Medication usage is direct result of his pulmonary embolism from his injury.

{¶ 22} It can be readily observed that the document makes no reference to Xarelto. That is, neither the preprinted form nor the handwritten markings and responses identify Xarelto as the medication being addressed.

{¶ 23} 12. Following a November 10, 2015 hearing, a district hearing officer ("DHO") issued an order that denies relator's June 26, 2015 motion. The DHO's order explains:

> The District Hearing Officer denies the Injured Worker's request to be reimbursed for the medication of Xarelto, as amended at hearing to be the only mediation to be requested for reimbursement, from 08/01/2011 through 08/01/2014, for lack of evidence that the request for payment was timely made, as required by Ohio Adm. Code 4123-3-23, and/or for lack of a medical causation, relating the prescription of this medication to the injury sustained in this claim.

{¶ 24} 13. Relator administratively appealed the DHO's order of November 10, 2015.

{¶ 25} 14. Following a January 21, 2016 hearing, an SHO issued an order affirming the DHO's order of November 10, 2015, and denying relator's motion. The SHO's order explains:

> This is an injury from 1986. Payment of the medication Xarelto has been made through private insurance since 1995. Staff Hearing Officer affirms the District Hearing Officer's finding that there is a lack of medical causation relating the prescription of this medication to this 1986 injury. Further, the request for reimbursement from 08/01/2011 through 08/01/2014 is denied as not having been timely filed for as required by Ohio Adm.Code Section 4123-3-23.

{¶ 26} 15. As averred by relator in his complaint at paragraph ten filed in this action, "[f]urther appeal to the Industrial Commission was denied." In its answer to the complaint, the commission admits the allegations as set forth at paragraph ten of the complaint.

{¶ 27} 16. On June 7, 2016, relator, James M. McGurr, filed this mandamus action.

Conclusions of Law:

{¶ 28} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 29} Citing Ohio Adm.Code 4123-3-23, the orders of the DHO and SHO both hold that the June 26, 2015 motion for reimbursement for out-of-pocket costs for the dispensing of Xarelto was untimely filed.

{¶ 30} Significantly, relator does not challenge or dispute the commission's reliance on Ohio Adm.Code 4123-3-23 in determining that the June 26, 2015 motion was untimely. Relator simply assumes that Ohio Adm.Code 4123-3-23 sets forth a two-year limitation on the filing of the request for reimbursement. Relator states:

> [I]t was error for the Hearing Officers to make a blanket finding that Mr. McGurr's request for reimbursement of Xarelto was not timely filed, when a significant portion of the request was clearly filed within the two-year statute of limitations established in Ohio Adm.Code 4123-3-23.

(Relator's Brief at 10.)

{¶ 31} Relator's assumption is not readily supported by a review of Ohio Adm.Code 4123-3-23 which currently provides effective July 27, 2015:

> (A) Except as otherwise provided in this rule, fee bills for medical or vocational rehabilitation services rendered in a claim shall be submitted to the bureau or commission for payment within one year of the date on which the service was rendered or one year after the date the services became payable under division (I) of section 4123.511 of the Revised Code, whichever is later, or shall be forever barred.
>
> * * *
>
> (C) Paragraph (A) of this rule shall not apply to the following:
>
> (1) Requests made by the centers for medicare and medicaid services in the United States department of health and human services for reimbursement of conditional payments made pursuant to section 1395y(b)(2) of title 42, United States Code (commonly known as the "Medicare Secondary Payer Act") as in effect on the date of the request;
>
> (2) Requests made by the Ohio department of medicaid, or by a medical assistance provider to whom the department has assigned its right of recovery for a claim for which it has notified the provider that it intends to recoup its prior payment for a claim, for reimbursement under sections 5160.35 to 5160.43 of the Revised Code for the cost of medical assistance paid on behalf of a Medicaid recipient;
>
> (3) Fee bills submitted outside the timeframe set forth in paragraph (A) of this rule due to MCO or bureau error; however, division (A) of section 4123.52 of the Revised Code shall still apply;
>
> (4) Fee bills submitted outside the timeframe set forth in paragraph (A) of this rule because the fee bills were initially submitted to a patient, different third-party payer, or state or federal program other than medicare or medicaid that reimburses for medical or vocational rehabilitation services and that patient, payer, or program has determined that it is not responsible for the cost of the services; however, division (A) of section 4123.52 of the Revised Code shall still apply.

{¶ 32} Thus, Ohio Adm.Code 4123-3-23(A) provides that fee bills shall be submitted to the bureau or commission for payment within one year of the date on which the services were rendered or one year after the date the services became payable or shall be forever barred, unless it can be shown that Ohio Adm.Code 4123-3-23(C) applies. Relator has not argued here, or before the commission, that Ohio Adm.Code 4123-3-23(C) applies.

{¶ 33} Nevertheless, the magistrate observes that Ohio Adm.Code 4123-3-23(C)(3) and (4) both state that "division (A) of section 4123.52 of the Revised Code shall still apply."

The magistrate further observes that R.C. 4123.52(A) provides:

The commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor.

{¶ 34} Relator fails to argue that R.C. 4123.52 somehow applies to his motion for reimbursement. It is not the duty of this court to make the argument that relator might have made.

{¶ 35} In its brief, without explanation, respondent asserts that former Ohio Adm.Code 4121-3-23 is applicable but fails to mention that the rule was repealed effective May 1, 2001. That is, respondent fails to explain how the repealed rule on which the commission did not rely can now be viewed as governing this case.

{¶ 36} Given that relator does not dispute the commission's reliance on Ohio Adm.Code 4123-3-23, nor does he present an argument for the applicability of Ohio Adm.Code 4123-3-23(C), the presumption is that Ohio Adm.Code 4123-3-23(A) applies. On its face, Ohio Adm.Code 4123-3-23(A) sets forth a one year limitation period. Clearly, all of the five transactions involving the dispensing of Xarelto are beyond the one year period. Thus, relator was time barred from requesting reimbursement on any of those five transactions.

{¶ 37} It is well established that, in order for a writ of mandamus to issue, relator must demonstrate: (1) that relator has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the acts, and (3) that relator has no plain

and an adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 38} In mandamus, the relator must prove his or her entitlement to the writ by clear and convincing evidence. *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117; *see State ex rel. Everhart v. Indus. Comm.,* 10th Dist. No. 15AP-1020, 2016-Ohio-8017.

{¶ 39} Relator has failed to prove his entitlement to the writ by clear and convincing evidence. *Id.*

{¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).